IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARQUIS COPEZ,                           *

    Plaintiff,                       *

        v.                         *        Civil Action No. DKC-23-1127

RYAN PRATT, *et al.*,                    *

    Defendants.                      *
                               ***

## MEMORANDUM OPINION

Self-represented Plaintiff Marquis Copez,[1] an inmate presently incarcerated at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, filed the above-captioned civil rights action pursuant to 42 U.S.C. § 1983 against Ryan Pratt, Lee Brown, and Markel Spencer.[2] ECF No. 1. Mr. Copez alleges that when housed at Western Correction Institution ("WCI") he was discriminated against and assaulted by correctional staff. *Id.* at 3. Mr. Copez seeks compensatory and punitive damages. *Id.* at 4.

---

[1] Mr. Copez is also known as Marquis Copes. ECF No. 18-8, ¶ 2.

[2] WCI is listed as an additional Defendant on the court's docket but it appears that the reference to WCI in the caption of the complaint was merely part of the address provided by Mr. Copez as to where the individually named Defendants were employed. ECF No. 1 at 1. Additionally, WCI is a building and not a person amenable to suit under 42 U.S.C. § 1983. Conduct amenable to suit under 42 U.S.C. § 1983 must be conduct undertaken by a person. Inanimate objects such as buildings, facilities, and grounds do not act under color of state law and are not subject to suit under § 1983. *See* 42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 & n. 55 (1978) (noting that under §1983 a "person" includes individuals and "bodies politic and corporate"); *Smith v. Montgomery Cnty. Corr. Facility*, Civ. No. PWG-13-3177, 2014 WL 4094963, at *3 (D. Md. Aug. 18, 2014) (holding that Montgomery County Correctional Facility "is an inanimate object that cannot act under color of state law and therefore is not a 'person' subject to suit under Section 1983"); *see generally* Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1230 (4th ed.)(June 2024 update). The Complaint will be dismissed as to WCI.

Defendants Ryan Pratt, Lee Brown, and Markel Spencer filed a motion to dismiss or, in the alternative, for summary judgment.  ECF No. 18.  The court informed Mr. Copez, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), that the failure to file a response in opposition to the motion could result in the dismissal of the complaint.  ECF No. 19.  Mr. Copez was granted additional time to respond to the motion (ECF No. 21), but he has not filed a response to the dispositive motion and his time to do so has expired.

Having reviewed the submitted materials, the court finds that no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2023).  For the reasons set forth below, the Defendants' motion will be granted.  Mr. Copez's July 12, 2022 excessive force claim and discrimination claims are dismissed without prejudice for failure to exhaust administrative remedies.  Mr. Copez's August 14, 2022 discrimination claim is dismissed for failure to state a claim. Summary judgment is granted as to Mr. Copez's August 14, 2022 excessive force claim.

## BACKGROUND

### A.    Mr. Copez's Allegations

Mr. Copez states that on July 12, 2022,[3] he was "racially discriminated against" by Correctional Officers Brown, Spencer, and Pratt who called him racial epithets.  ECF No. 1.[4]

---

[3] Defendants question whether this date is a typographical error and whether he only seeks to complain about events on August 14, 2022. ECF No. 18-1 at 2, FN 1.  The date of July 12 is used repeatedly in the complaint but the records attached relate to an incident on August 14.  Plaintiff has not filed a response to Defendants' motion so his claims have not been clarified.  In light of this confusion, the court will construe the complaint to assert that Mr. Copez was racially discriminated and subjected to excessive force on both July 12, 2022 and August 14, 2022.

[4] Mr. Copez attached a "Declaration Pursuant to Fed. R. Civ. P. 56(d)" to his Complaint.  ECF No. 1-1.  The Declaration, a fill in the blank form, states that Mr. Copez submits the affidavit in support of his opposition to "Defendants' pre-discovery Motion to Dismiss or, in the Alterative, for Summary Judgment, and to demonstrate [his] good-faith belief that discovery is necessary to allow me to properly justify [his] opposition to Defendants' Motion."  ECF No. 1-1 at 1, ¶ 4.  Mr. Copez's "declaration" is not a proper Rule 56(d) affidavit because it was filed before Defendants

While Mr. Copez spoke to Officer Markel, Officer Spencer tackled him resulting in injury to Mr. Copez's back.  *Id*.  Mr. Copez states that he was attacked twice by correctional staff "for no apparent reason."  *Id*. at 3.

Mr. Copez attached to his Complaint the first page of an Intelligence & Investigative Division ("IID") report which explains that on August 14, 2022, Officers Spencer and Brown conducted a search of Mr. Copez's cell.  ECF No. 1-2 at 1.  During the search, Mr. Copez became irate and refused the officers' orders to sit down.  *Id*.  The officers then took Mr. Copez to the floor and, while doing so, Mr. Copez threatened, "When I get out, I'm gonna make a trip back to Cumberland to see you guys."  *Id*.  No injuries or complaints of excessive force were reported as a result of this altercation.  *Id*.  Two weapons were found during the cell search but no charges were issued.  *Id*.

Mr. Copez also provided portions of his medical records.  ECF No. 1-3.  On August 14, 2022, Registered Nurse Ramsburg was called to housing unit 4 to assess Mr. Copez who was in handcuffs in a holding cell.  ECF No. 1-3 at 1.  He complained that he had a bullet in his back and that a correctional officer injured his back.  *Id*.  No injuries to Mr. Copez's back were observed.  *Id*.  His gait was described as steady and he had full range of motion.  *Id*.  Mr. Copez was also evaluated on September 12, 2022, this time, by Physician's Assistant Negussie.  ECF No. 1-3 at 2-6.  Mr. Copez reported a history of chronic back pain secondary to a gunshot wound in 2006. *Id*. at 3.

---

filed a dispositive motion and does not explain why discovery is necessary. "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20 (D. Md. Feb. 14, 2011)).  "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'"  *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011), *rev'd on other grounds* (alteration in original) (citation omitted).

Subsequently, Mr. Copez submitted the "declarations" of Isaiah Giles and Robert Cuestas. ECF Nos. 12-1 and 12-2.  Neither declaration is made under the penalties of perjury.  Mr. Giles states that on July 12, 2022, he was at WCI and "witness[ed] Officer[s] Ryan Pratt, Lee Brown and Markel Spencer attack" Mr. Copez.  ECF No. 12-1 at 1.  Mr. Giles also states that Mr. Copez suffered a dislocated disc.  *Id*.  He does not provide any additional details regarding the altercation. Mr. Cuestas states that on July 12, 2022, he saw Officers Pratt, Spencer, and Brown assault Mr. Copez when bringing him out of his cell for showers.  ECF No. 12-2.  Mr. Cuestas states that he heard Officer Pratt refer to Mr. Copez as a "nigger" and "boy" and told him he was going to get him.  *Id*.  Mr. Copez became angry and upset and told Officer Pratt that he was not Black but Samoan.  *Id*.  Officer Spencer then "attack[ed] Mr. Copez out of the chair physically causing an injury to his lower vereterbrae in his lower spinal column." (sic) *Id*.

## B.    Defendants' Response

Mr. Copez was housed at WCI from March 17, 2022, to August 17, 2022.  ECF No. 18-8, ¶ 2 (Clise, Decl.).  There are no records of any incident involving Mr. Copez and Defendants occurring on July 12, 2022.  ECF No. 18-8, ¶¶ 5, 9, 10 (Clise, Decl.).

On August 14, 2022, Defendants Brown, Spencer, and Pratt were assigned to conduct a random search of Mr. Copez's cell.  ECF No. 18-5, ¶ 4 (Brown, Decl.); ECF No. 18-6, ¶ 4 (Spencer, Decl.); ECF No. 18-7, ¶ 4 (Pratt, Decl.).  During the search, Mr. Copez "was very irate and noncompliant with officer orders for him to be seated in the hallway outside of his cell." ECF No. 18-5, ¶ 5; ECF No. 18-6, ¶ 5; ECF No. 18-7, ¶ 5.  He physically resisted attempts to guide him to his seat.  ECF No. 18-5, ¶ 6; ECF No. 18-6, ¶ 6; ECF No. 18-7, ¶ 6.  During the search, Mr. Copez screamed at officers, shouted obscenities, and made threats of physical violence.  ECF No. 18-5, ¶ 7; ECF No. 18-6, ¶ 7; ECF No. 18-7, ¶ 7.

Use of Force and Incident Reports prepared by the officers on the date of the incident confirm the information provided in their affidavits and provide additional details.  The reports all indicate that while Mr. Copez's cell was being searched he was instructed to sit on a plastic chair outside of his cell so that he could observe the search.  ECF No. 18-2 at 10-11 (Brown report); 12 (Pratt report); 13 (Smithberger report); 14-15 (Spencer report).  Mr. Copez was non-compliant with directives during the search and disruptive.  *Id*. Officer Smithberger and Officer Brown assisted Mr. Copez to his chair while Officer Spencer and Officer Pratt searched the cell.  *Id*.  Mr. Copez attempted to stand up from the chair and move toward his cell.  *Id*.  He was directed repeatedly by multiple officers to sit in the chair.  *Id.*  When Mr. Copez failed to cooperate, Officer Spencer took him to the ground.  *Id*.  Once the officers gained control over Mr. Copez, Officer Spencer and Officer Brown helped him to his feet and escorted him to the strip cage on the housing tier.  Mr. Copez resisted the escort and verbally threatened staff.  *Id*.  When the use of force was investigated, Mr. Copez refused to provide a statement.  ECF No. 18-2 at 17.

Mr. Copez was medically evaluated after the escort.  ECF No. 18-2 at 3; ECF No. 18-2 at 31.  He complained that he had a bullet in his back and that a correctional officer injured his back.  *Id*.  No injuries to his back were observed, his gait was described as steady, and he demonstrated full range of motion.  *Id*.

Due to Mr. Copez's threat made toward officers, IID was contacted regarding the incident but no case number was generated regarding the threat.  ECF No. 18-2 at 3,  26-28, 43.  The search of Mr. Copez's cell uncovered two homemade weapons.  ECF No. 18-2 at 3; ECF No. 18-2 at 24-25, 30, 40.

As a result of the incident, Mr. Copez was charged with two rule violations:  (1) rule 104-making threats that include using physical harm to objects, property or individuals; and (2) rule

316-disobeying an order.  ECF No. 18-2 at 18.  He was also placed on staff alert.  ECF No. 18-2 at 29.

The tier videos, which do not have any audio,[5] generally confirm the officers' descriptions of the August 14 incident.  They show that Mr. Copez was hand-cuffed behind his back through the cell door before he was removed from the cell.  ECF No. 18-Ex. 2 Upper Front Tier ("Video 1"-filed separately) at 00:05-00:17; ECF No. 18-Ex. 3 Upper Rear Tier ("Video 2"-filed separately) at 00:05-00:17.  Mr. Copez's door opened and he left his cell, while officers went into his cell.  Video 1 at 00:57-01:06; Video 2 at 00:56-01:06.  A chair was placed in the hallway.  Video 1 at 1:06-1:07; Video 2 at 01:06-01:07.  Mr. Copez walked down the hallway and then returned to his cell where he did not sit in the chair but moved close to the cell door and appeared to speak or yell into the cell.  Video 1 at 1:04-01:24; Video 2 at 1:05-01:24.  One officer then placed his hand on Mr. Copez's arm, in an apparent effort to guide him away from the cell door and toward the chair.  Video 1 at 01:23-01:32; Video 2 at 1:24-1:34.  Mr. Copez pulled away and the officer again attempted to move Mr. Copez from the cell door, but Mr. Copez pulled away again.  Video 1 at 1:25-1:32; Video 2 at 1:25-1:32.  Two officers stood next to Mr. Copez and physically guided him away from the cell door and into the chair.  Video 1 at 01:32-01:36; Video 2 at 01:32-01:35.  As the officers stood next to Mr. Copez,  Mr. Copez attempted to stand up, appearing to push against the officers.  Video 1 at 01:45-01:48; Video 2 at 01:45-01:48.  Quickly thereafter an officer took Mr. Copez to the floor.  Video 1 at 01:48-01:54; Video 2 at 01:48-01:54.  After Mr. Copez was under control, he was put on his feet and escorted away from the cell.  Video

---

[5]   Mr. Copez was shown the videos on September 26, 2023.  ECF No. 18-11, ¶ 7 (Bradley, Decl.).

1 at 2:03-2:20; Video 2 at 2:01-02:12.  None of the officers kicked, punched, or otherwise struck Mr. Copez.  Video 1; Video 2.

Mr. Copez did not file any administrative remedies or grievance appeals regarding incidents that occurred on either July 12, 2022, or August 14, 2022.  ECF No. 18-7, ¶ 10; ECF No. 18-10, ¶ 5.

## STANDARDS OF REVIEW

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim.  However, the complaint must allege sufficient facts to establish those elements."  *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

When the moving party styles its motion as a motion to dismiss or, in the alternative, motion for summary judgment, as is the case here, and attaches additional materials to their motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the court, and the court can treat the motion as one for summary judgment.  *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (emphases added).  "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'"  *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th

Cir. 2012)).  "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

When the issue presented on summary judgment is an affirmative defense on which the moving party will have the burden of proof, the required showing is more robust. "As to those elements on which it bears the burden of proof, a government is only entitled to summary judgment if the proffered evidence is such that a rational factfinder could only find for the government." *Smith v. Ozmint*, 578 F. 3d 246, 250 (4th Cir. 2009), citing *Gooden v. Howard County, Md.*, 954 F. 2d 960, 971 (4th Cir. 1992) ("[W]here . . . the movant would have the burden of persuasion at trial, the summary judgment burden is a correspondingly heavy one."); *see also Ohio Valley Env't Coal v. Foal Coal Co., LLC*, 274 F. Supp. 3d 378, 384 (S. D. W. Va 2017).

## DISCUSSION

Defendants have moved to dismiss the complaint or for summary judgment in their favor, arguing that:  (1) Mr. Copez failed to exhaust  administrative remedies; (2) Mr. Copez fails to state a claim for racial discrimination; (3) Mr. Copez fails to state a claim regarding his being "tackled";

(4) Mr. Copez fails to state a claim regarding his back injury; (5) Mr. Copez fails to state a claim regarding his being "attacked twice for no reason"; and (6) they are entitled to summary judgment as to the August 14, 2022 incident.  ECF No. 58-1.

###### A.    Exhaustion

As noted before, the court will construe the complaint to assert claims of racial discrimination and excessive force occurring on July 12, 2022 and August 14, 2022.  ECF No. 1 at 2-3.  Defendants raise the affirmative defense that Mr. Copez has failed properly to exhaust his administrative remedies as to all claims.  If Mr. Copez's claims were not properly presented through the administrative remedy procedure, they must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e.  The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  42 U.S.C. § 1997e(h).  The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd,* 98 F. App'x 253 (4th Cir. 2004).

Although exhaustion under § 1997e(a) is not a jurisdictional prerequisite, the plaintiff must nonetheless exhaust before this court will hear the claim.  *See Jones v. Bock*, 549 U.S. 199, 215–16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 682 (4th Cir. 2005).  The

exhaustion requirement "allow[s] a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones*, 549 U.S. at 219.  It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process.  *Chase*, 286 F. Supp. 2d at 530.

Because the court may not consider an unexhausted claim, *see Jones*, 549 U.S. at 220, in this very real sense, exhaustion prior to federal suit is mandatory.  *Ross v. Blake*, 578 U.S. 632, 639 (2016).  Therefore, a court ordinarily may not excuse a failure to exhaust.  *Id.* (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006).  Importantly, however, the court must ensure that "any defects in exhaustion were not procured from the action or inaction of prison officials."  *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).  Moreover, an inmate need only exhaust "available" remedies.  42 U.S.C. § 1997e(a); *see Ross*, 578 U.S. at 637.  An administrative remedy is not "available" where the prisoner, "through no fault of his own, was prevented from availing himself of it."  *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citing *Aquilar-Avellaveda*, 478 F. 3d at 1225); *Kaba*, 458 F.3d at 684.

Within the Maryland Division of Correction, where the event complained of is subject to an IID investigation the process for administrative remedies is unavailable and an inmate is not

required to use it to meet exhaustion requirements.  *Younger v. Crowder*, 79 F.4th 373, 381 (4th Cir. 2023).

Inmates housed at an institution operated by the Maryland Department of Public Safety and Correctional Services may avail themselves of the administrative grievance process which is designed for "inmate complaint resolution."  *See generally* Md. Code (2008 Repl. Vol.), Correctional Services Article ("C.S."), §§ 10-201 *et seq.*; COMAR 12.07.01.01B(1) (defining ARP).  If an ARP is filed and denied, the prisoner may appeal the denial within 30 days to the Commissioner of Correction.  COMAR 12.02.28.14(B)(5).  If the Commissioner of Correction denies the appeal, the prisoner may file a grievance with the IGO, also within 30 days.  COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B).  If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing.  C.S. § 10-207(b)(1); *see* COMAR 12.07.01.06B.  An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review.  C.S. § 10-207(b)(2)(ii).

Here, it appears that Mr. Copez was aware of the administrative grievance process and the process was available to him, as Mr. Copez filed other ARPs regarding alleged racial discrimination occurring in May of 2022.  *See* ECF No. 18-9.  But Mr. Copez did not file any ARPs concerning events occurring on July 12, 2022 or August 14, 2022.  ECF No. 18-10, ¶ 5.

Because Mr. Copez failed to initiate, much less complete, the administrative remedy process prior to filing federal suit as to any  claims he may have of racial discrimination and excessive force occurring on  July 12, 2022, those claims must be dismissed without prejudice. There is no indication that the July 12, 2022 incident resulted in an IID investigation being opened which would waive the administrative exhaustion requirement, and therefore Mr. Copez's claims regarding any incident occurring on  July 12, 2022, are subject to dismissal for failure to exhaust

administrative remedies.  However, it appears that the ARP process was not available to Mr. Copez

as to his August 14, 2022 claims because there was a pending IID investigation.  Accordingly, the

court will address these claims on the merits.

### B.  Racial Discrimination

Mr. Copez's claim that he was subjected to racial discrimination during the August 14,

2022 incident will be dismissed for failure to state a claim.   Mr. Copez alleges that he was subject

to racial discrimination when racial epithets were directed at him.  While reprehensible, use of

racial epithets by a prison guard, alone, does not provide a basis for a constitutional claim.  *Hunter*

*v. Butler*, Case No: DLB 21-212, 2022 WL 824853 (D.Md. March 18, 2022):

> Generally speaking, "not all undesirable behavior by state actors is
> unconstitutional." *Pink v. Lester*, 52 F.3d 73, 75 (4th Cir. 1995). "Mere threats or
> verbal abuse by prison officials, without more, do not state a cognizable claim under
> § 1983." *Henslee v. Lewis*, 153 Fed. App'x 178, 180 (4th Cir. 2005) (citing *Collins
> v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979)); see *Huffman v. Schevel*, No. GJH-
> 16-514, 2018 WL 4599648, at *4 (D. Md. Sept. 24, 2018) (same); *Cofield v. Hogan*,
> No. CCB-16-3037, 2018 WL 1535493, at *8 (D. Md. Mar. 27, 2018); see also
> *Robertson v. Plano City*, 70 F.3d 21, 24 (5th Cir. 1995) (verbal threats are not
> Eighth Amendment violation); *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir.
> 1993) (noting "[m]ere allegations of verbal abuse do not present actionable claims
> under § 1983"); *Prescott v. Johnson*, No. 18CV577, 2022 WL 672694, at *14 (E.D.
> Tex. Mar. 7, 2022) (dismissing § 1983 claim "regarding verbal threats, name
> calling, and harassment" for failure to state a claim); *Shabazz v. Pico*, 994 F. Supp.
> 460, 474 (S.D.N.Y. 1998) (observing that "no matter how inappropriate,
> unprofessional, or reprehensible [verbal harassment, including through the use of
> racial slurs and race-based threats] might seem," if it is "unaccompanied by any
> injury," it "does not constitute the violation of any federally protected right and,
> therefore, is not actionable under ... § 1983" (citation omitted)); *Slagel v. Shell Oil
> Refinery*, 811 F. Supp. 378, 382 (C.D. Ill. 1993) (describing "[v]erbal harassment
> and abusive language" as "unprofessional and inexcusable" but "simply not
> sufficient to state a constitutional claim"), aff'd, 23 F.3d 410 (7th Cir. 1994).
> Additionally, a prisoner cannot state a claim under § 1983 based on "taunting ... by
> guards." *Cofield*, 2018 WL 1535493, at *8 (concluding that prison staff's alleged
> harassment of plaintiff "by using racial epithets [was] not enough to state a § 1983
> claim" because the conduct did not "result in a constitutional deprivation) (citing
> *McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001)).

**August 14, 2022 Use of Force**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  U.S. Const. Amend. VIII; *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016).  Notably, it "proscribes more than physically barbarous punishments." *Estelle*, 429 U.S. at 103.  The Eighth Amendment "embodies" the "'concepts of dignity, civilized standards, humanity, and decency . . .'" *Id.* (citation omitted).  Thus, it "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996); *cf. DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 989 U.S. 189, 199-200 (1989) (stating that when a state holds a person "against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being").

The Fourth Circuit has determined that "not all Eighth Amendment violations are the same; while some constitute 'deliberate indifference' others constitute 'excessive force.'" *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319–20 (1986)).  Here, Mr. Copez claims that the Defendants used excessive force on August 14, 2022.

Whether a prison official used excessive force is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992).  The court must look at the necessity for the application of force, the relationship between that need and the amount of force applied, the extent of the injury inflicted, the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials, and any efforts made to temper the severity of the

response. *Whitley*, 475 U.S. at 321.  The absence of significant injury, alone, is not dispositive of a claim of excessive force.  *Wilkins v. Gaddy*, 559 U.S. 34 (2010).  While the extent of injury incurred is one factor in determining the necessity of force in a particular situation, if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm.  *Id.* at 38.

As to the August 14, 2022, use of force, there are no material disputes of fact as to whether Defendants' use of force was reasonable and the record demonstrates that it was.  The uncontroverted evidence establishes that on August 14, 2022, Defendants were tasked with searching Mr. Copez's cell.  Mr. Copez was removed from his cell and directed to sit in a chair outside of the cell while the search took place.  Rather than comply with correctional officers' directives to sit in the chair, he walked back and forth along the hallway, shouting at the officers, and refusing their repeated direct orders to sit.  Eventually staff used physical force to sit Mr. Copez in the chair.  After being seated, he attempted to stand, pushing against officers who stood by him in an effort to keep him seated and away from his cell door.  Mr. Copez continued to create a disturbance, screaming at staff and refusing their directions, resulting, ultimately in Officer Spencer taking Mr. Copez to the floor.  No hits, kicks, or blows were delivered.  Mr. Copez was placed under control and immediately removed from the tier and assessed by medical staff who documented no injury.

The application of force was necessary because Mr. Copez refused officers' direct orders to sit while his cell was searched and he continued to physically resist their efforts to confine him to the chair during the cell search.  Mr. Copez refused to cooperate with instructions from staff, verbally threatened staff, and despite being handcuffed, moved aggressively toward them.  The record shows that the amount of force applied was only that which was necessary to secure Mr.

Copez's compliance and then to escort him from the tier.  Mr. Copez, who refused to be restrained, who disobeyed direct orders, and who physically responded to correctional staffs' effort to restrain him, posed a serious risk to institutional safety and the officers on the scene.  The officers gave several orders and attempted to gain Mr. Copez's compliance before he was forcefully taken to the ground.  On this record, Defendants are entitled to summary judgment as to the August 14, 2022, use of force.

**CONCLUSION**

For the foregoing reasons, the Defendants' motion is granted.  Mr. Copez's claims of discrimination and use of excessive force on July 12, 2022, are dismissed for failure to exhaust administrative remedies. Mr. Copez's claim of racial discrimination occurring on August 14, 2022 is dismissed for failure to state a claim.  Summary judgment is granted in favor of Defendants as to Mr. Copez's claim of use of excessive force on August 14, 2022.

A separate order follows.

Date: July 12, 2024                                         /s/
                                            _____
                                            DEBORAH K. CHASANOW
                                            United States District Judge